IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY JONES,

Plaintiff,

No. 2:11-cv-00192 MCE EFB P

vs.

TOFT, et al.,

Defendants.

FINDINGS AND RECOMMENDATIONS

_______________________________/

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Currently pending before the court are defendant Blum's and defendant Toft's motions for summary judgment. Dckt. Nos. 47, 57. For the reasons that follow, both motions must be denied.

**I. Background**

This action proceeds on the verified amended complaint filed July 28, 2011. Dckt. No. 38. Plaintiff alleges:

> On or about March 9th, 2009, Plaintiff, Anthony Jones, was brought to Mercy San Juan Medical Center in order to be treated for multiple shotgun, and dog bite wounds. Some time later, Plaintiff . . . was told that he would need surgery in order to have a shotgun pellet removed from his face. Plaintiff was told that this surgery was needed because the pellet had severed a facial nerve, and if removed, it was possible that said nerve could grow back. As it was, Plaintiff was partially paralyzed because of said pellet, so Plaintiff agreed to undergo surgery.

> According to hospital records, a Dr. Blum was the primary surgean [sic], and a Dr. Toft was assistant surgeon. . . .
>
> Plaintiff underwent surgery, and was subsequently sent to Sacramento County Main Jail. Plaintiff had complained to medical staff about severe facial pain, and a lump in his left facial cheek, but was only given pain medication and told that there's nothing inside of his face.
>
> Plaintiff arrived at CDCR June 3, 2010. On or about the 10th of June, 2010, Plaintiff was taken to a public hospital from Deuel Vocational Institution after suffering a seizure, and hitting his head. At said hospital, Plaintiff was given a CAT scan of his head and neck areas. Several days afterwards, Plaintiff was seen by a Dr. Mallet, at D.V.I. whereupon, Dr. Mallet told Plaintiff that there is a "bullet" in Plaintiff's face. It was at this time that Plaintiff realized that doctors Blum, and Toft had violated his 8th Constitutional Amendment [sic].
>
> ***
>
> According to hospital records, it was documented that the "bullet" was removed, and there were no complications during surgery. . . . Plaintiff suffers daily from the pain, and nerve damage in his face, and has been on pain and nerve damage medications.
>
> ***
>
> Plaintiff contends that Defendants acted with malice, and were spiteful. For, the main reason for the surgery was to remove the pellet, thus why else would they leave the pellet to continue doing its damage? Plaintiff's face was cut open from right in front of the left ear, and the ear was partially severed from its foundation. This ear was not sewed back in place properly. Also, there was massive blood stuck in Plaintiff's ear from the surgery, and as a result of Defendants' sewing Plaintiff's ear on wrong, and not draining the ear, Plaintiff has suffered several ear infections, and pain at the bottom of said ear.
>
> Plaintiff contends that Defendants' actions fell well below carrying out their responsibilities as surgeons. Plaintiff further contends that Defendants' actions or omissions had to have been deliberate, as the main reason for said surgery was to remove the shotgun pellet, and one or both of them reported that said pellet was, in fact, removed. . . .
>
> Plaintiff contends that Defendants knew of and even attempted to clean their hands of the violations. On the "Surgeone's [sic] Operative Note," neither Dr. Blum nor Dr. Toft put their signature on the bottom of the document where the signature is required.

*Id.* at 1-4. In sum, plaintiff contends that a single shotgun pellet was lodged in his face, that defendants failed to remove it while representing that they had removed it, and that defendants botched the suturing of his surgical incision.

According to defendants, plaintiff arrived at Mercy San Juan Medical Center on March 9, 2009 with a shotgun wound to the face and neck. Dckt. No. 47-2, Def. Blum's Separate Statement of Undisputed Material Facts ISO Def. Blum's Mot. for Summ. J. (hereinafter "Blum UMF") 1; Dckt. No. 57-2, Def. Toft's Separate Statement of Undisputed Material Facts ISO Def. Toft's Mot. for Summ. J. (hereinafter "Toft UMF") 1. A Dr. Owens, who evaluated plaintiff at admission, wrote on his report that plaintiff had been shot in the face and left posterior neck and that his face showed swelling in his left cheek and poor control of his left facial nerve. Blum UMF 2. A CT scan revealed a fracture of the left zygomatic arch, a bullet fragment below the arch, and a bullet fragment behind the left mandibular condyle (rather than a single intact bullet or pellet, as plaintiff alleges). Blum UMF 3; Toft UMF 3. Defendant Toft examined plaintiff and noted that he suffered from complete left facial paralysis. Blum UMF 4; Toft UMF 4. Defendant Blum performed a left partial parotidectomy with facial nerve dissection, removal of bullet fragment, and open reduction of the zygomatic fracture with defendant Toft assisting. Blum UMF 5; Toft UMF 5. One bullet fragment was removed from the junction of the uper and lower divisions of the facial nerve and the zygomatic fracture was supported. Blum UMF 6-9; Toft UMF 6. During surgery defendant Blum stimulated the facial nerve. Blum UMF 7. Plaintiff's face did not react, and no positive EMG tracing occurred on the facial nerve monitor. *Id.* Plaintiff was discharged the following day in stable condition. Blum UMF 9-10; Toft UMF 7.

## II. Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

*U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue. *Celotex.*, 477 U.S. at 323. Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Concurrent with his motion for summary judgment, defendant Blum served plaintiff with a notice detailing his obligations in responding to the motion. *Woods v. Carey*, 684 F.3d 934, 2012 U.S. App. LEXIS 13779, *17 (9th Cir. 2012); *see Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988). Defendant Toft's motion lacked such a notice, but was filed only 14 days after defendant Blum's motion, which included the notice. There is no indication that plaintiff would have responded differently to defendant Toft's motion had he been provided another notice two weeks later; indeed, his oppositions to both defendant Blum's and defendant Toft's motions are remarkably similar. Accordingly, the notice provided with defendant Blum's

motion was sufficient to apprise plaintiff of his obligations under Federal Rule of Civil Procedure 56 in responding to both defendant Blum's and defendant Toft's motions.

**III. Analysis**

Plaintiff alleges that defendants violated his rights under the Eighth Amendment to the U.S. Constitution by failing to remove a shotgun pellet from his face and failing to properly stitch the surgical incision around his ear. The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. An officer has been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b) failed to adequately respond. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Neither a defendant's negligence nor a plaintiff's general disagreement with the treatment he received suffices to establish deliberate indifference. *Estelle*, 429 U.S. at 106; *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Evidence that medical caregivers disagreed as to the need to pursue one course of treatment over another is also insufficient, by itself, to establish deliberate indifference. *Jackson*, 90 F.3d at 332. Rather, the plaintiff must show that the course chosen by the defendants was medically unacceptable under the circumstances. *Jackson*, 90 F.3d at 332.

Finally, "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene" to prevent a violation imposed by someone else. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). A defendant-officer may be held liable for failing to intervene when he had enough time to observe what was happening and to intervene and prevent or curtail the violation, but failed to do so. *See Lanier v. City of Fresno,* 2010 U.S. Dist. LEXIS 130459, 2010 WL 5113799, at *6 (E.D. Cal. Dec. 8, 2010) (citations omitted).

Defendants make no argument that plaintiff did not suffer from a serious medical need. Instead, defendants argue that the undisputed facts show that they were not deliberately indifferent to plaintiff's medical needs. Each relies on a declaration from an otolaryngologic surgeon opining that the treatment provided to plaintiff was not professionally negligent. Thus, defendants argue, they were by necessity not deliberately indifferent to plaintiff's medical needs.

Defendant Blum's expert, Dr. Shoab Siddique, is a board-certified otolaryngologic surgeon employed by Mercy Medical Group in Sacramento. Dckt. No. 48, Siddique Decl. ¶ 1. Dr. Siddique attests to having performed parotidectomies similar to the one performed on plaintiff by defendants. *Id.* ¶ 3. Based on a review of plaintiff's medical records related to the surgery, Dr. Siddique opines that "Dr. Blum met the applicable standard of care during the facial operation." *Id.* ¶ 9. According to Dr. Siddique,

> Dr. Blum appropriately used a facial nerve monitor while performing the surgery. He then properly located and followed the facial nerve. At that point, Dr. Blum appropriately stimulated the nerve and determined that there was no reaction in Plaintiff's face or the nerve monitor. In addition, Dr. Blum properly removed the bullet near the facial nerve and appropriately set the zygomatic arch into position.
>
> The standard of care did not require Dr. Blum to remove every shotgun bullet in Plaintiff's face. As shown by the CT scan of Plaintiff's head in June 2010, the bullet fragments were located in Plaintiff's infratemporal fossa. The infratemporal fossa is a cavity situated below and medial to the zygonatic arch, deep within the face. Since the fragments were located so deep within Plaintiff's face, attempted removal of the bullets could have caused more harm than benefit to Plaintiff. Dr. Blum appropriately removed the bullet near the facial nerve. However, the standard of care did not require Dr. Blum to remove the bullets in the infratemporal fossa.

*Id.* ¶¶ 11-12.

Dr. Siddique further opines that the left side of plaintiff's face was already paralyzed prior to surgery, and no act or omission by Dr. Blum caused or contributed to that paralysis. *Id.* ¶ 13.

Dr. Siddique's declaration is silent on plaintiff's allegation that defendants did not suture his ear back in place properly, other than generally opining that Dr. Blum's treatment and care of plaintiff was within the standard of care for a surgeon under the same circumstances. *Id.* ¶ 14.

Defendant Toft's expert, Dr. Jonathan Sykes, is a professor of facial plastic and reconstructive surgery at the University of California, Davis. Dckt. No. 57-3, Sykes Decl. ¶ 1. Dr. Sykes opines that defendant Toft's care of plaintiff was within the standard of care for otolaryngologic surgeons. *Id.* ¶ 5. As to the bullet fragment that defendants left in plaintiff's face, Dr. Sykes opines, "Given its location, it was entirely appropriate for Dr. Bum and Dr. Toft to decide not to remove the bullet fragment. Surgically removing a bullet from such a location would pose additional risks to Mr. Jones' facial nerve." *Id.* ¶ 5b. Dr. Sykes further attests that plaintiff's facial paralysis was caused "by the bullet entering his face and damaging the surrounding nerves," and that neither the remaining fragment nor the surgery contributed to the paralysis. *Id.* ¶ 5c. Dr. Sykes's declaration is also silent on plaintiff's allegation that defendants did not suture his ear back in place properly.

Plaintiff responds by asserting his belief that there was only one shotgun "bullet" (or pellet or fragment thereof) in his face and that, because one still remains, nothing was removed from his face during the March 9, 2010 surgery. Plaintiff's initial opposition provided no evidence to back up that belief, and the CT scan report from June 10, 2010 provided by plaintiff supports defendants' version of events, stating "[e]xtensive streak artifact arises from metallic densities in the left infratemporal fossa, most likely bullet fragments." Dckt. No. 75 at 12. However, plaintiff submitted "supplemental" oppositions on August 15, 2012 attaching a head x-ray report from March 6, 2012. Dckt. No. 80 at 4. That report suggests that a pellet remains in plaintiff's face in addition to the fragments in the infratemporal fossa, stating, "There is a bullet

identified within the soft tissues and lateral to the left maxillary sinus. . . . There are also small radiopaque foreign bodies identified near the left mandibular condyle." *Id.* Defendant Toft objects to the supplemental opposition on procedural grounds but has not commented on the substance of the opposition.[1]

The court need not resolve the procedural propriety of plaintiff's supplemental oppositions at this time, however, because summary judgment in favor of defendants is not appropriate on the basis of the current record. Defendants have not addressed plaintiff's allegations that defendants failed to properly suture the surgical incision and drain plaintiff's ear and, if so, whether that failure rises to a level of neglect that amounts to deliberate indifference. Accordingly, the undersigned recommends that the instant motions be denied without prejudice to defendants filing new motions addressing all of the allegations in the complaint. Upon filing new motions for summary judgment the defendants shall serve plaintiff, concurrently with the new motions, the *Rand/Woods* notice regarding plaintiff's burden in opposing the motion.

## IV. Recommendation

Accordingly, it hereby RECOMMENDED that defendant Blum's January 13, 2012 motion for summary judgment and defendant Toft's January 27, 2012 motion for summary judgment be denied without prejudice to the filing of new summary judgment motions as provided herein within 30 days of any order adopting these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

---

[1] Plaintiff also argues that a single bullet fragmented into the two locations, and defendants were obligated to remove all the fragments because they said they were going to remove "the bullet." This argument does nothing to establish that defendants' conduct fell below the standard of care or to counter defendants' evidence that it was medically acceptable to leave the fragment in the infratemporal fossa.

"Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 4, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE