IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY JONES,

        Plaintiff,           No. 2:11-cv-00192 MCE EFB P

   vs.

TOFT, et al.,                    <u>ORDER</u>

        Defendants.
_____/

     Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. He claims that the defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights when he was being treated for multiple shotgun wounds. The court previously denied motions for summary judgment by defendants Blum and Toft due in large part to their failure to substantively address the evidence submitted by plaintiff that, contrary to the defendants' assertions, they did not remove the disputed pellet (at times referred to in the medical records as "bullet" fragment) from his face. Defendants filed new summary judgment motions, accompanied by supplemental expert declarations. Dckt. Nos. 95, 96. Plaintiff has requested an extension of time to respond to the summary judgment motions, Dckt. No. 102, and seeks appointment of medical experts. Dckt. Nos. 82, 104. Plaintiff additionally asks the court to subpoena certain evidence from third parties on his behalf. Dckt.

1

Nos. 103. The crux of plaintiff's requests is that he needs access to certain medical facts and evidence to be able to meaningfully respond to the motion.

For the reasons stated below, the court construes plaintiff's requests to include a request to deny or continue the summary judgment motions pursuant to Federal Rule of Civil Procedure 56(d) to enable him time to obtain declarations and/or take discovery necessary to oppose the motions. As discussed below, the court grants plaintiff's requests for a neutral medical expert and denies defendants' motions for summary judgment Rule 56(d) without prejudice to subsequent renewal upon review of the neutral medical expert's report and any further discovery. The court denies plaintiff's requests for subpoenas and ammunition and radiology experts.

**I.     Background**

This action proceeds on the verified amended complaint filed July 28, 2011. Dckt. No. 38. Plaintiff alleges that:

> On or about March 9th, 2009, Plaintiff, Anthony Jones, was brought to Mercy San Juan Medical Center in order to be treated for multiple shotgun, and dog bite wounds. Some time later, Plaintiff . . . was told that he would need surgery in order to have a shotgun pellet removed from his face. Plaintiff was told that this surgery was needed because the pellet had severed a facial nerve, and if removed, it was possible that said nerve could grow back. As it was, Plaintiff was partially paralyzed because of said pellet, so Plaintiff agreed to undergo surgery.
>
> According to hospital records, a Dr. Blum was the primary surgean [sic], and a Dr. Toft was assistant surgeon. . . .
>
> Plaintiff underwent surgery, and was subsequently sent to Sacramento County Main Jail. Plaintiff had complained to medical staff about severe facial pain, and a lump in his left facial cheek, but was only given pain medication and told that there's nothing inside of his face.
>
> Plaintiff arrived at CDCR June 3, 2010. On or about the 10th of June, 2010, Plaintiff was taken to a public hospital from Deuel Vocational Institution after suffering a seizure, and hitting his head. At said hospital, Plaintiff was given a CAT scan of his head and neck areas. Several days afterwards, Plaintiff was seen by a Dr. Mallet, at D.V.I. whereupon, Dr. Mallet told Plaintiff that there is a "bullet" in Plaintiff's face. It was at this time that Plaintiff realized that doctors Blum, and Toft had violated his 8th Constitutional Amendment [sic].
>
> ***

> According to hospital records, it was documented that the "bullet" was removed, and there were no complications during surgery. . . . Plaintiff suffers daily from the pain, and nerve damage in his face, and has been on pain and nerve damage medications.
>
> \*\*\*
>
> Plaintiff contends that Defendants acted with malice, and were spiteful.  For, the main reason for the surgery was to remove the pellet, thus why else would they leave the pellet to continue doing its damage?  Plaintiff's face was cut open from right in front of the left ear, and the ear was partially severed from its foundation.  This ear was not sewed back in place properly.  Also, there was massive blood stuck in Plaintiff's ear from the surgery, and as a result of Defendants' sewing Plaintiff's ear on wrong, and not draining the ear, Plaintiff has suffered several ear infections, and pain at the bottom of said ear.
>
> Plaintiff contends that Defendants' actions fell well below carrying out their responsibilities as surgeons.  Plaintiff further contends that Defendants' actions or omissions had to have been deliberate, as the main reason for said surgery was to <u>remove</u> the shotgun pellet, and one or both of them reported that said pellet was, in fact, removed. . . .
>
> Plaintiff contends that Defendants knew of and even attempted to clean their hands of the violations.  On the "Surgeone's [sic] Operative Note," neither Dr. Blum nor Dr. Toft put their signature on the bottom of the document where the signature is required.

*Id.* at 1-4.  In sum, plaintiff contends that defendants: (1) failed to remove a bullet, pellet, or fragment thereof from his cheek while representing that they had removed it and (2) botched the surgical incision.

Defendants previously moved for summary judgment.  Dckt. Nos. 47, 57.  On September 26, 2012, the district court denied those motions without prejudice, adopting the September 4, 2012 recommendations of the undersigned.  Dckt. Nos. 91, 83.  The court concluded that summary judgment could not be granted because defendants' experts had offered no opinion regarding plaintiff's claim that defendants did not make and/or suture the surgical incision properly.  Dckt. No. 83 at 9-10.  The court further noted that plaintiff had submitted supplemental oppositions to the summary judgment motions to which he attached an x-ray report from March 6, 2012 that could support plaintiff's claim that defendants' did not remove the pellet from his face that they claimed they had.  *Id.*  Defendants did not substantively respond to

3

that evidence. The court gave defendants an opportunity to file new summary judgment motions to address plaintiff's surgical incision claim and the x-ray report. *Id.* at 10; Dckt. No. 91.

On October 26, 2012, defendants filed new summary judgment motions, accompanied by supplemental expert declarations. Dckt. Nos. 95, 96. Plaintiff seeks appointment of experts and an extension of time to respond to those motions. Dckt. Nos. 82, 102, 104. Plaintiff additionally asks the court to subpoena certain evidence from third parties on his behalf. Dckt. Nos. 102, 103.

## II. Appointment of Expert

Under 28 U.S.C. § 1915, federal courts may permit an indigent party to file suit without prepaying fees and costs. That statute does not authorize courts to subsidize expert fees, however. *Hadsell v. IRS*, 107 F.3d 750, 752 (9th Cir. 1997) (relying on *Tedder v. Odel*, 890 F.2d 210, 211-12 (9th Cir. 1989) (per curiam)). Plaintiff asks the court to appoint a medical expert on his behalf to support his opposition to defendants' motions for summary judgment or, alternatively, to appoint a neutral medical expert. Dckt. No. 82.

While the court cannot itself pay for the experts plaintiff seeks,[1] Federal Rule of Evidence 706 authorizes the court to appoint an expert witness and apportion the fee among the parties. Where, as here, one party is indigent, the court has discretion to apportion the entire fee to the other side. *McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991), *vacated and remanded on other grounds by Helling v. McKinney*, 502 U.S. 903 (1991). Rule 706 allows only for the appointment of a neutral expert. It does not provide for the appointment of an expert on plaintiff's behalf. *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1177-78 (E.D. Cal. 2011). Accordingly, that alternative request is denied. However, the circumstances of this case warrant the appointment of a neutral expert.

////

---

[1] As noted, plaintiff requests the appointment of a "medical" expert, a radiology expert, and an ammunition expert. Dckt. Nos. 82, 104.

4

Where a party has filed a motion for appointment of a neutral expert under Rule 706, the court must provide a reasoned explanation of its ruling on the motion. *Id.* at 1178. Several factors guide the court's decision. First, and most importantly, the court considers whether the opinion of a neutral expert will promote accurate factfinding. *Id.* at 1179. Additionally, the court may consider the ability of the indigent party to obtain an expert and the significance of the rights at stake in the case. *Id.* at 1182-84.

In this case, the court has concluded that a neutral medical expert is essential for an accurate determination of the issues raised by defendants' motions for summary judgment. Plaintiff's legal claims are premised on two primary factual assertions: (1) that defendants left a shotgun pellet in his cheek while representing that they had removed it and (2) that defendants mishandled plaintiff's surgical incision. Even with the renewed motion for summary judgment, defendants' expert declarations do not provide sufficient information on these issues for the reasons that follow.

First, as to plaintiff's claim that defendants did not remove the pellet from his cheek that they claimed they had, both of defendants' experts rely solely on the reports generated by defendants near the time of the surgery to opine that defendants did in fact remove that pellet (while leaving other pellets or fragments elsewhere in plaintiff's face). Dckt. No. 48, Decl. of Dr. Shoab Siddique ISO Def. Blum's Mot. for Summ. J. (hereinafter "Siddique Decl.") ¶ 9; Dckt. No. 100, Supp. Decl. of Dr. Jonathan Sykes ISO Def. Toft's Mot. for Summ. J. (hereinafter "Supp. Sykes Decl.") ¶ 3. Specifically, defendants' experts assert that defendants removed a bullet, pellet, or fragment thereof from the junction of the first main branch of the facial nerve, while leaving one or more fragments behind the parotid gland and/or within the infratemporal fossa. Siddique Decl. ¶ 12; Supp. Sykes Decl. ¶ 3b. Neither expert examined plaintiff or provided any opinion on the March 6, 2012 x-ray report, which the court previously indicated could support plaintiff's assertion that defendants did not remove *any* pellet, bullet, or fragment thereof from his face. Defendants' experts both rely on the fact that one pellet or fragment was

5

removed in opining that defendants' treatment of plaintiff was within the standard of care. Without expert testimony explaining whether the March 6, 2012 x-ray report (or other examination of plaintiff) shows a pellet in the location from which defendants' claim to have removed a pellet (and, if so, how that bears on whether defendants' conduct was deliberately indifferent), the court cannot determine whether plaintiff's evidence raises a triable dispute as to plaintiff's first primary factual assertion.[2]

Second, as to plaintiff's claim that defendants did not properly handle the surgical incision, defendants' experts have little or no basis for offering opinions that defendants' conduct fell within the standard of care. Dr. Sykes declares as the basis of his opinion:

> In order to carry out the parotidectomy, the surgeons made a standard preauricular incision with cervical extension. This incision was specifically modified to give adequate exposure for this procedure. Following the completion of the surgery, the surgeons appropriately sutured the skin layers with 4-0 Vicryl and 6-0 nylon. This is the standard manner in which a surgical incision, such as this one, is closed. Thus, both Dr. Toft and Dr. Blum were within the standard of care in closing the incision.

Supp. Sykes Decl. ¶ 5d. As mentioned above, Dr. Sykes's observations are made solely based on the records created by defendants near the time of the surgery. *Id.* ¶ 3. Dr. Sykes has not personally examined plaintiff, and his opinion is essentially that *if* defendants performed the surgery the way they described, they performed within the standard of care. But it is plaintiff's assertion that defendants did *not* perform the surgery in that manner. Dr. Siddique's declaration is no more helpful in this regard. He states:

> In a parotidectomy, an incision is made in front of the ear down to the neck. At no point is the ear removed or severed from its foundation. Therefore, it is impossible that a parotidectomy would result in an ear being significantly misplaced. If the incision is sutured too tightly, it is possible that the ear would shift very slightly following the procedure.
>
> In the extremely rare circumstance that a parotidectomy resulted in a slight shift of an ear, such a result would be simply cosmetic. . . .

---

[2] This is not a case of plaintiff failing to produce evidence on the factual question in dispute. Plaintiff has produced medical reports pertaining to the issue. But the medical evidence requires interpretation and explanation by a medical expert.

> Although it is common to have some blood remain in the ear canal after surgery, the blood will simply dry and fall out of the ear following surgery. The blood will not remain nor will it cause infection. There is no need to drain the ear of this blood.

Dckt. No. 95-3, Supp. Decl. of Dr. Shoab Siddique ISO Def. Blum's Mot. for Summ. J (hereinafter "Supp. Siddique Decl.") ¶¶ 7-9. Dr. Siddique has not examined plaintiff and simply explains that, if defendants performed the surgery in the normal manner, plaintiff would not have the injuries he claims he has. But, again, it is plaintiff's claim that defendants did *not* perform the surgery in the normal manner. Thus, the court cannot determine from the information currently before it whether plaintiff's evidence has raised a triable issue of fact as to whether defendants' handling of the surgical incision was deliberately indifferent.

The court accordingly concludes that accurate determination of the facts in this case weighs heavily in favor of the appointment of a neutral medical expert who can examine plaintiff and/or his medical records and provide opinions on whether defendants removed the pellet, bullet, or fragment thereof as they described in their operative reports and whether defendants' handling of the surgery fell within the standard of care. In addition, plaintiff is incarcerated and indigent and therefore faces significant barriers to finding his own expert. Lastly, the right at stake in this case – plaintiff's right to receive medical care that is not so reckless as to qualify as cruel and unusual punishment under the Eighth Amendment – is a significant right. Thus, all factors weigh in favor of appointment of a neutral otolaryngologic surgeon to assist the court. Because plaintiff is indigent, the court exercises its discretion under Rule 706 to apportion the cost of this expert entirely to defendants, to be split evenly among them.

The court will deny plaintiff's additional requests for a radiology expert and an ammunition expert, however, because it is not clear that either is necessary to accurately determine the facts material to summary judgment. Plaintiff seeks these experts "to determine what type of pellets are still stuck within various parts of his body" and to "show that there's a whole pellet, not any fragment, in the left side of his face." Dckt. No. 104 at 2 (emphasis in

original).  The court must determine whether there is a triable issue of material fact that defendants' conduct in performing a parotidectomy on plaintiff's face on March 9, 2009 fell so below the standard of care as to have been deliberately indifferent to plaintiff's medical needs.  It does not appear that the court needs to know the type of pellets stuck in plaintiff's body to determine this issue.  And because the court has ordered the appointment of a neutral medical expert to opine as to whether defendants' treatment or response to plaintiff's medical condition was so wanting as to constitute deliberate indifference, that expert may provide the necessary information regarding what is where in the left side of plaintiff's face.  Thus, the court does not currently need the assistance of additional experts.

### III.   Extension of Time

Plaintiff seeks an extension of time to respond to defendants' motions for summary judgment.  Dckt. No. 102.  Plaintiff states that he needs additional time because he needs x-ray images that the California Department of Corrections and Rehabilitation ("CDCR") is refusing to release, needs the assistance of an expert, needs the court to subpoena certain photographs on his behalf from the Sacramento Sheriff's Department, and is currently on lockdown and unable to access the law library.  In light of the court's decision to appoint a neutral expert, the court denies without prejudice for further consideration the currently pending summary judgment motions appearing at Docket Nos. 95 and 96.  Accordingly plaintiff's motion for an extension of time is moot.  After receipt of the expert's report defendants may renew their motions.  Plaintiff may file his oppositions not more than 21 days after the date of service of any renewed summary judgment motions.  Defendants may serve and file replies not more than seven days after service of plaintiff's oppositions.

### IV.   Subpoenas

Plaintiff's motion for "the Court to subpoena all CT scan views and visuals" from non-party Mercy San Juan Medical Center (Dckt. No. 103) is construed as a request for the Clerk to provide the necessary subpoena forms and is granted.  Plaintiff additionally requests "that the

court subpoena all [x-ray] views (negatives and originals) that were taken on 3-6-12 from CDCR (at Mule Creek State Prison) and from Diagnostic Radiological Imaging Dri Scripps" and "color photos of the 'foreign body metallic' specimen that was given to an Alan Lancaster. . . [of the] Sacramento Sheriff's Department." Dckt. No. 102. The Clerk shall send to plaintiff four blank subpoena forms which plaintiff shall complete and return for service by the U.S. Marshal.

**V.    Order**

Accordingly, it is hereby ORDERED that:

1. Plaintiff's August 15, 2012 motion for an expert medical witness (Dckt. No. 82) is denied in part and granted in part. Plaintiff's request for an expert witness to act on his behalf is denied. Plaintiff's request for a neutral medical expert under Federal Rule of Evidence 706 is granted. Within 21 days of the date of this order, the parties shall each submit to the court three nominees of otolaryngologic surgeons to potentially act as a neutral expert in this case. The court will select an individual from these lists to act as a neutral expert as provided in this order.[3] Defendants shall pay the costs of the expert, split equally between them.

2. Plaintiff's November 14, 2012 motion for neutral ammunition and radiology experts (Dckt. No. 104) is denied.

3. Defendants' motions for summary judgment (Dckt. Nos. 95 and 96) are denied without prejudice pending receipt of the neutral expert's report, at which time defendants may renew the motions. Fed. R. Civ. P. 56(d).

4. Plaintiff's motion for an extension of time (Dckt. No. 102) is denied as moot.

5. Plaintiff's motion for subpoenas, construed as a request for forms to complete and return for service of subpoenas on Mercy San Juan Medical Center, Mule Creek State Prison, Diagnostic Radiological Imaging Dri Scripps, and the Sacramento Sheriff's Department for copies of x-ray images, photographs, and CT scan visuals on his behalf (Dckt. Nos. 102, 103), is

---

[3] If plaintiff fails to submit a list of nominees, the court will select the expert solely from defendants' nominees.

1 granted.

2      6. The Clerk is directed to send plaintiff four blank subpoena forms.

3      7. Within 21 days from the date of this order, plaintiff shall complete the attached Notice of Submission of Documents form and shall return the completed subpoena forms to the Court for service by the U.S. Marshal.

Dated: November 26, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5                      IN THE UNITED STATES DISTRICT COURT
6                     FOR THE EASTERN DISTRICT OF CALIFORNIA
7  ANTHONY JONES,
8           Plaintiff,                       No. 2:11-cv-00192 MCE EFB P
9      vs.
10 TOFT, et al.,
11          Defendants.              <u>NOTICE OF SUBMISSION OF DOCUMENTS</u>
12 _____/
13      In accordance with the court's order filed _____, plaintiff hereby
14 submits:
15          _____      completed subpoena forms
16 Dated:
17
18                                                   _____
                                                            Plaintiff
19
20
21
22
23
24
25
26