UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY JONES, | No. 2:11-cv-192-MCE-EFB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| TOFT, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C § 1983.  Currently pending before the court are: (1) plaintiff's "motion to compel discovery," which actually seeks to obtain from a third party (Mercy San Juan Medical Center) a compact disc of radiological images  (ECF No. 147); (2) plaintiff's motion to compel discovery from defendant Toft (ECF No. 148); (3) plaintiff's motion to renew third-party subpoenas (ECF No. 153); (4) defendant Toft's motion for summary judgment (ECF No. 151); and (5) defendant Blum's motion for summary judgment (ECF No. 152).  For the reasons that follow, plaintiff's discovery-related motions are denied and the motions for summary judgment must be granted.

**I.     The Factual Contentions of the Parties**

This action proceeds on the verified amended complaint filed on July 28, 2011.  ECF No. 38. Plaintiff alleges:

/////

1

> On or about March 9th, 2009, Plaintiff, Anthony Jones, was brought to Mercy San Juan Medical Center in order to be treated for multiple shotgun, and dog bite wounds. Some time later, Plaintiff . . . was told that he would need surgery in order to have a shotgun pellet removed from his face. Plaintiff was told that this surgery was needed because the pellet had severed a facial nerve, and if removed, it was possible that said nerve could grow back. As it was, Plaintiff was partially paralyzed because of said pellet, so Plaintiff agreed to undergo surgery.
>
> According to hospital records, a Dr. Blum was the primary surgean [sic], and a Dr. Toft was assistant surgeon. . . .
>
> Plaintiff underwent surgery, and was subsequently sent to Sacramento County Main Jail. Plaintiff had complained to medical staff about severe facial pain, and a lump in his left facial cheek, but was only given pain medication and told that there's nothing inside of his face.
>
> Plaintiff arrived at CDCR June 3, 2010. On or about the 10th of June, 2010, Plaintiff was taken to a public hospital from Deuel Vocational Institution after suffering a seizure, and hitting his head. At said hospital, Plaintiff was given a CAT scan of his head and neck areas. Several days afterwards, Plaintiff was seen by a Dr. Mallet, at D.V.I. whereupon, Dr. Mallet told Plaintiff that there is a "bullet" in Plaintiff's face. It was at this time that Plaintiff realized that doctors Blum, and Toft had violated his 8th Constitutional Amendment [sic].
>
> \*\*\*
>
> According to hospital records, it was documented that the "bullet" was removed, and there were no complications during surgery. . . . Plaintiff suffers daily from the pain, and nerve damage in his face, and has been on pain and nerve damage medications.
>
> \*\*\*
>
> Plaintiff contends that Defendants acted with malice, and were spiteful. For, the main reason for the surgery was to remove the pellet, thus why else would they leave the pellet to continue doing its damage? Plaintiff's face was cut open from right in front of the left ear, and the ear was partially severed from its foundation. This ear was not sewed back in place properly. Also, there was massive blood stuck in Plaintiff's ear from the surgery, and as a result of Defendants' sewing Plaintiff's ear on wrong, and not draining the ear, Plaintiff has suffered several ear infections, and pain at the bottom of said ear.
>
> Plaintiff contends that Defendants' actions fell well below carrying out their responsibilities as surgeons. Plaintiff further contends that Defendants' actions or omissions had to have been deliberate, as the main reason for said surgery was to remove the shotgun pellet, and one or both of them reported that said pellet was, in fact, removed. . . .
>
> Plaintiff contends that Defendants knew of and even attempted to clean their hands of the violations. On the "Surgeone's [sic] Operative Note," neither Dr. Blum nor Dr. Toft put their signature on the bottom of the document where the signature is required.

*Id*. at 1-4. In sum, plaintiff contends that a single bullet or pellet was lodged in his face, that

2

1    defendants failed to remove the bullet while representing that they had removed it, and that
2    defendants botched the suturing of his surgical incision. In plaintiff's view, these alleged actions
3    violated his Eighth Amendment rights. Plaintiff alleges that, as a result, he suffers severe chronic
4    pain in his face as well as nerve damage. *Id.* at 2, 3.

5    According to defendants, plaintiff arrived at Mercy San Juan Medical Center on March 9,
6    2009 with a shotgun wound to the face and neck. ECF No. 152-2, Def. Blum's Separate
7    Statement of Undisputed Material Facts ISO Def. Blum's Mot. for Summ. J. (hereinafter "Blum
8    SUF") 1; ECF No. 151-2, Def. Toft's Separate Statement of Undisputed Material Facts ISO Def.
9    Toft's Mot. for Summ. J. (hereinafter "Toft SUF") 1. A Dr. Owens, who evaluated plaintiff at
10   admission, wrote on his report that plaintiff had been shot in the face and left posterior neck and
11   that his face showed swelling in his left cheek and poor control of his left facial nerve. Blum
12   SUF 2. A CT scan revealed a fracture of the left zygomatic arch, a fragment below the arch, and
13   a fragment behind the left mandibular condyle (rather than a single intact bullet or pellet, as
14   plaintiff alleges). Blum SUF 3; Toft SUF 3. Defendant Toft examined plaintiff and noted that he
15   suffered from complete left facial paralysis. Blum SUF 4; Toft SUF 4.

16   Dr. Blum performed a left partial parotidectomy with facial nerve dissection, removal of
17   bullet fragment, and open reduction of the zygomatic fracture with defendant Toft assisting.
18   Blum SUF 5; Toft SUF 5. One fragment was removed from the junction of the upper and lower
19   divisions of the facial nerve and the zygomatic fracture was supported. Blum SUF 6-9; Toft SUF
20   6. During the surgery, defendant Blum stimulated the facial nerve. Blum SUF 7. Plaintiff's face
21   did not react, and no positive EMG tracing occurred on the facial nerve monitor. *Id*. Plaintiff
22   was discharged the following day in stable condition. Blum SUF 9-10; Toft SUF 8.

23   **II.     Relevant Procedural Background**

24   Defendants initially sought summary judgment in 2012. ECF Nos. 47, 53. The court
25   denied the motions without prejudice, finding that defendants had not addressed plaintiff's
26   allegations that defendants failed to properly suture the surgical incision and drain his ear. ECF
27   No. 83 at 10; ECF No. 91. Defendants filed new summary judgment motions in October 2012.
28   ECF Nos. 95, 96. In response, plaintiff asked the court to appoint experts and issue subpoenas to

1  Mercy San Juan Medical Center ("Mercy San Juan"), Diagnostic Radiological Imaging Dri
2  Scripps ("DRI"), and the Sacramento Sheriff's Department. ECF Nos. 82, 102. The court
3  concluded that a neutral medical expert was necessary to assess "whether defendants' treatment
4  or response to plaintiff's medical condition was so wanting as to constitute deliberate
5  indifference," and accordingly denied defendants' summary judgment motions again without
6  prejudice pending receipt of the expert's report. ECF No. 105 at 8. The court further directed the
7  Clerk of Court to send plaintiff blank subpoena forms so that he could seek evidence (radiological
8  images and the fragments defendants allegedly removed from his face) from Mercy San Juan,
9  DRI, and the Sheriff's Department. *Id.* at 10.

10     The U.S. Marshal served plaintiff's subpoenas on the three nonparties in January 2013.
11 ECF Nos. 119, 120, 121. However, plaintiff neglected to fill in the time, date, and place for
12 production of the evidence he sought, and the nonparties did not respond to the subpoenas. *See*
13 *id.*; ECF No. 147.[1]

14     The court appointed Dr. Willard E. Fee to serve as a neutral medical expert. ECF No.
15 122. Dr. Fee examined medical records provided to him by the court and performed a physical
16 examination of plaintiff at the courthouse on April 12, 2013. *See* ECF No. 123. At the exam,
17 defense counsel produced copies of radiological images obtained from Mercy San Juan for the
18 court and plaintiff. Dr. Fee did not review certain other radiological images taken by defendants
19 in the years following the surgery, as they were not yet available. *See* ECF No. 142 at 4.

20     Dr. Fee provided his report to the court in late April 2013. In relevant part, the report
21 reads:
22 /////
23 /////
24 /////
25 /////
26
27     [1] However, as discussed below, the court appointed expert concluded that the x-ray
28 images plaintiff requested in those subpoenas would not make difference as to his professional opinion regarding the treatment of plaintiff.

4

> A discrepancy exists in the records in that on the discharge summary, p. 192 od 222 (dictated by Dr. Toft)[2], transection of the left facial nerve is reported, whereas in the operation report, p. 189 of 222 (dictated by Dr. Blum), the nerve is said to be intact although it was a little bit swollen throughout. This is a very important discrepancy in that if the nerve was transected it should have been repaired immediately at the time of surgery. Not to have done so, would be below the standard of care. It is possible that this discharge summary report represents a typographical error.
>
> \*\*\*
>
> On April 12, 2013 I performed a history and physical exam on Mr. Jones . . . . His complaints at the present time are diffuse facial pain all day, every day – left cheek and left post auricular area and at the entrance wound in the suboccipital area "all around to the front of his face." He is not allowed to receive any pain medications for the pain at his present incarceration site. He believes that some or all of his pain is related to retained bullet fragments. Additionally he complains that the left side of his face feels heavy; his left face is swollen; he can't breathe through his left nostril as well as his right; and when sleeping, his left eye doesn't close completely.
>
> \*\*\*
>
> IMPRESSION: 1. Clarification needs to be obtained re: whether or not the facial nerve was transected. If it was transected, the standard of care has been breached as no repair of the nerve was performed or dictated into the operative report. Sadly, the only way one can determine this is to ask Drs. Toft and Blum if the nerve was or was not transected. There is no radiological study or neurological test that can determine this at this point as he already has partial return to function.
>
> 2. I suspect that the discharge summary transcription is in error and that the doctors meant to say "No transection of the facial nerve" because they give a nice description of the facial nerve in their operative report and were prepared to do a facial nerve graft and repair (see Toft pre-op consultation) if that was found. Specifically, on p. 190/222 they say "There was no laceration of the nerve." Also, the hand written "Surgeon's Operative Note" written immediately at the conclusion of the surgery states that the facial nerve was intact (No laceration or transection).
>
> 3. There is evidence of otherwise excellent pre-operative, intra-operative, and post-operative care. The incision used was standard, ear was sutured into pre-op position, and removal of 1 bullet fragment in the operative field was performed. It is not considered wise to search out and remove other bullet fragments.
>
> 4. I see no evidence of deliberate indifference or violation of the Eighth Amendment assuming that no transection of the nerve occurred.
>
> \*\*\*
>
> I am prepared to look at any post-operative radiological images, but doubt that would be helpful except to answer some of Mr. Jones' questions. They would not change my impression about his surgical care or what is to be done now.

---

[2] The discharge summary was actually dictated by a Dr. Eric Morse. ECF No. 151-6; ECF No. 70 at 14.

1    ECF No. 142.  In addition, Dr. Fee provided responses to questions plaintiff asked him.  ECF

2    Nos. 142 at 5, 145.  In doing so, Dr. Fee noted that, based on his review of post-operative

3    radiological images, not all bullet fragments were removed from plaintiff's face.  *Id.*  He further

4    noted that he did not recommend further surgery to remove remaining fragments, as plaintiff

5    could have a worse cosmetic and pain outcome.  *Id.*

6    **III.    Plaintiff's Discovery Motions**

7    Plaintiff has filed three discovery-related motions.  ECF Nos. 147, 148, 153.  In two

8    motions, plaintiff complains that he has received no response to his subpoenas from DRI Scripps

9    or the Sacramento Sheriff's Department and that he cannot read the images from Mercy San Juan

10   because he does not have access to a computer.  ECF Nos. 147, 153.  Plaintiff also complains that

11   the disc from Mercy San Juan contains only images of "maxillofacial and head" and not *all* the

12   images he asked for (which included scans of portions of plaintiff's body that are not relevant to

13   this case).  ECF No. 147.  Plaintiff wants the court to order custody officials to print out the

14   Mercy San Juan images for him and to reissue all three subpoenas.  ECF Nos. 147, 153.  Plaintiff

15   argues that he needs the information he seeks from the third parties to properly oppose

16   defendants' summary judgment motions.  ECF No. 147.

17   Plaintiff's complaints regarding the third party subpoenas can be viewed in two ways: (1)

18   as motions to compel and (2) as motions brought pursuant to Federal Rule of Civil Procedure

19   56(d) for additional time for discovery needed to oppose summary judgment.  The motions fail as

20   motions to compel because plaintiff failed to provide the third parties with a time and place for

21   production of the requested items, as Federal Rule of Civil Procedure 45(a)(1)(iii) requires.  The

22   motions also fail under Rule 56(d).  Under that rule, where a party opposing summary judgment

23   shows that he cannot present facts essential to the opposition, the court may: (1) defer

24   consideration of the motion, (2) deny the motion, (3) allow time for further discovery, or (4) issue

25   another appropriate order.  Plaintiff's motions must be denied because he has failed to show that

26   the information he seeks is essential to his oppositions.

27   Further, plaintiff does not explain why he needs the information he seeks in the subpoenas

28   to oppose summary judgment.  Plaintiff's primary contentions in this case are that defendants

6

were deliberately indifferent to his serious medical needs when they: (1) failed to remove a bullet while representing that they had removed it and (2) botched the suturing of his surgical incision.[3] Presumably, plaintiff would like the radiological images to support his contention that defendants did not remove the bullet and hopes to receive a response from the Sheriff that no bullet was turned over during the surgery, as defendants contend. Even if plaintiff were to receive such evidence, which is exceedingly doubtful,[4] the question before this court is not whether or not defendants removed a bullet from plaintiff's face. Rather, the question is whether defendants were deliberately indifferent to plaintiff's serious medical needs in the manner in which they performed the surgery. The court now has three medical experts – two presented by defendants and one appointed by the court – who opine that defendants complied with the standard of care in their treatment of the bullets, pellets, or fragments that lodged in plaintiff's face. ECF Nos. 142, 152-4, 151-5. Importantly, the court's neutral expert, Dr. Fee, states that reviewing post-operative images "would not change my impression about [plaintiff's] surgical care." ECF No. 142 at 4. Thus, plaintiff has not shown that further discovery to obtain the x-ray images would reveal facts that would preclude summary judgment. Accordingly, the requests to renew the subpoenas and for an order directing custody officials to print radiological images are denied. *See Panatronic USA v. AT & T Corp.,* 287 F.3d 840, 846 (9th Cir. 2002) (affirming denial of Rule 56(f)[[5]] request where movant failed to "show how allowing additional discovery would have precluded summary judgment." (internal citation and quotation marks omitted)); *see also Apache Survival Coal. v. United States*, 21 F.3d 895, 911 n.17 (9th Cir. 1994) (it is within the court's

---

[3] Plaintiff now additionally contends that defendants transected his facial nerve during the surgery and failed to repair it. ECF No. 161 at 7. The evidence plaintiff seeks has no bearing on this issue, as Dr. Fee states that "the only way one can determine [whether the nerve was transected] is task Drs. Toft and Blum[.]" ECF No. 142 at 3. That is, none of the scans plaintiff seeks, nor the bullet allegedly taken from his face, could shed light on this issue. *Id.* ("There is no radiological study or neurological test that can determine [whether the nerve was transected] at this point[.]").

[4] See discussion in the Summary Judgment section, below.

[5] "Former Rule 56(f) of the Federal Rules of Civil Procedure became Rule 56(d) under the 2010 Amendments to the Federal Rules." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 990 n. 7 (9th Cir. 2013).

discretion to deny further discovery under Rule 56(f) where the complaining party is only speculating about what it might discover).

In plaintiff's third motion, he complains that defendant Toft failed to submit to a deposition. ECF No. 148. According to plaintiff, he noticed the deposition and gave defendant Toft the choice of appearing or responding to written questions submitted by plaintiff through the mail. Plaintiff contends that received no response and he asks the court to compel defendant Toft to respond to the questions. Defendant Toft responds that the deposition notice was defective because it not served at least 33 days prior to the noticed date. ECF No. 150. Nevertheless, defendant Toft has provided answers to plaintiff's written questions. *Id.* Plaintiff has not objected to those responses in any way. Accordingly, the court denies this motion to compel as moot.

**IV.   Defendants' Motions for Summary Judgment**

     **A.   Summary Judgment Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting

8

1  the basis for its motion and identifying those portions of the record, together with affidavits, if
2  any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477
3  U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving
4  party meets its burden with a properly supported motion, the burden then shifts to the opposing
5  party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e);
6  *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

7        A clear focus on where the burden of proof lies as to the factual issue in question is crucial
8  to summary judgment procedures. Depending on which party bears that burden, the party seeking
9  summary judgment does not necessarily need to submit any evidence of its own. When the
10 opposing party would have the burden of proof on a dispositive issue at trial, the moving party
11 need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National*
12 *Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters
13 which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-
14 24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive
15 issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,
16 depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment
17 should be entered, after adequate time for discovery and upon motion, against a party who fails to
18 make a showing sufficient to establish the existence of an element essential to that party's case,
19 and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a
20 circumstance, summary judgment must be granted, "so long as whatever is before the district
21 court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is
22 satisfied." *Id.* at 323.

23       To defeat summary judgment the opposing party must establish a genuine dispute as to a
24 material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that
25 is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at
26 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law
27 will properly preclude the entry of summary judgment."). Whether a factual dispute is material is
28 determined by the substantive law applicable for the claim in question. *Id.* If the opposing party

is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

/////

Concurrent with the instant motions, defendants advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF Nos. 151, 152; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**B.     Analysis**

Plaintiff alleges that defendants violated his rights under the Eighth Amendment to the U.S. Constitution by failing to remove a shotgun pellet from his face, failing to properly stitch the surgical incision around his ear (ECF No. 38 at 1-4), and transecting his facial nerve but not repairing it (ECF No. 161 at 7).

The Eighth Amendment to the U.S. Constitution protects prisoners from inhumane methods of punishment and inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). To show that medical care was so deficient as to violate the guarantee of the Eighth Amendment, a plaintiff must show that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. A defendant has been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b) failed to adequately respond. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Neither a defendant's negligence nor a plaintiff's general disagreement with the treatment he received suffices to establish deliberate indifference. *Estelle*, 429 U.S. at 106; *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Rather, the plaintiff must show that the course chosen by the defendant was medically unacceptable under the circumstances. *Jackson*, 90 F.3d at 332.

It is undisputed that plaintiff's shotgun wounds presented a serious medical need. Defendants argue, however, that their response was within the standard of care (i.e., not negligent) and thus, by necessity, not deliberately indifferent. Here, the medical evidence before

11

the court could not enable a rational trier of fact to conclude that defendants' conduct was deliberately indifferent. *See Matsushita*, 475 U.S. at 587. Indeed, the record before the court shows adequate care was provided. That evidence consists of plaintiff's medical records and the opinions of three otolaryngology experts: Drs. Sykes, Siddique, and Fee.

Defendant Toft's expert, Dr. Jonathan Sykes, is an otolaryngologic surgeon and professor of facial plastic and reconstructive surgery at the University of California, Davis. ECF No. 151-5 ¶ 1. Dr. Sykes reviewed plaintiff's pertinent medical records from Mercy San Juan, including defendant Toft's March 9, 2009 consultation report, defendant Blum's March 9, 2009 operative report, and Dr. Eric Morse's March 10, 2009 discharge summary. *Id.* ¶ 3. Dr. Sykes summarizes those records, stating that defendant Toft's review of plaintiff's CT scans revealed a bullet fragment below the interior left zygomatic arch, a zygomatic arch fracture, and a bullet fragment posterior to the left mandibular condyle. *Id.* ¶ 3.b. Defendant Toft's physical examination of plaintiff revealed complete facial paralysis on all left branches, an intact hypoglossal nerve, intact sensation in the V1-V2-V3 distribution, and complete eye closure. *Id.* Defendant Toft explained the risks and benefits of surgery to plaintiff, including the risks of a large facial scar, leg scar from nerve harvest, permanent facial paralysis, synkinesis, dry eye, exposed eye, hematoma, and poor outcome. *Id.* ¶ 3.c. Dr. Sykes declares:

> It is my medical opinion, to a reasonable degree of medical probability, that all aspects of care provided by Dr. Toft to Mr. Jones were keeping with the appropriate standard of care:
>
> a.   Dr. Toft performed an appropriate evaluation of Mr. Jones and conducted a proper evaluation of Mr. Jones' CT scans.
>
> b.   Dr. Toft rendered appropriate and adequate care to Mr. Jones. The bullet fragment was embedded behind the parotid gland. Given its location, it was entirely appropriate for Dr. Blum and Dr. Toft to decide not to remove the bullet fragment. Surgically removing a bullet from such a location would pose additional risks to Mr. Jones' facial nerve.
>
> c.   Further, Mr. Jones' clamed facial paralysis was caused by the bullet entering his face and damaging the surrounding nerves. Any bullet remnants left in Mr. Jones's face are not the source of his facial paralysis, nor did the surgery itself contribute to the paralysis.
>
> d.   I understand plaintiff contends that the surgical incision was improperly sutured, causing him pain. It is my opinion to a medical degree of probability that the incision was made and sutured appropriately

12

> and not the cause of plaintiff's ear pain. In order to carry out the parotidectomy, the surgeons made a standard preauricular incision with cervical extension. This incision was specifically modified to give adequate exposure for this procedure. Following the completion of the surgery, the surgeons appropriately sutured the skin layers with 4-0 Vicryl and 6-0 nylon. This is the standard manner in which a surgical incision, such as this one, is closed. Thus, both Dr. Toft and Dr. Blum were within the standard of care in closing the incision. It is also my opinion to a medical degree of probability that the surgical incision is not the source of plaintiff's ear pain. Rather, any pain plaintiff has experienced is a result of the initial trauma from the gunshot blast to his face and neck.

*Id.* ¶ 5.

Dr. Blum's expert, Dr. Shoab Siddique, is an otolaryngologist practicing with the Mercy Medical Group in Sacramento. ECF No. 152-4 at ¶ 1. Dr. Siddique has performed parotidectomies similar to the one at the heart of this case. *Id.* ¶ 3. He is familiar with facial paralysis caused by damage to the parotid gland and facial nerve. *Id.* ¶ 4. Dr. Siddique reviewed plaintiff's medical records from Mercy San Juan at the time of his parotidectomy as well as a number of later records, including Dr. Fee's report and a 2010 CT scan. *Id.* ¶¶ 5, 11. Dr. Siddique declares:

> It is my opinion, based on the records outlined above and my background, training and experience, [that] Dr. Blum met the applicable standard of care during the facial operation. In my opinion, Dr. Blum used the level of skill, knowledge, and care expected of other surgeons under the same or similar circumstances.
>
> Dr. Blum appropriately used a facial nerve monitor while performing the surgery. He then properly located and followed the facial nerve. At that point, Dr. Blum appropriately stimulated the nerve and determined that there was no reaction in Plaintiff's face or the nerve monitor. In addition, Dr. Blum properly removed the bullet near the facial nerve and appropriately set the zygomatic arch into position.
>
> The standard of care did not require Dr. Blum to remove every shotgun bullet in Plaintiff's face. As shown by the CT scan of Plaintiff's head in June 2010, the bullet fragments were located in Plaintiff's infratemporal fossa. The infratemporal fossa is a cavity situated below and medial to the zygomatic arch, deep within the face. Since the fragments were located so deep within Plaintiff's face, attempted removal of the bullets could have caused more harm than benefit to Plaintiff. Dr. Blum appropriately removed the bullet near the facial nerve. However, the standard of care did not require Dr. Blum to remove the bullets in the infratemporal fossa.
>
> Furthermore, it is my medical opinion that Dr. Blum did not cause or contribute to Plaintiff's injuries. The facial nerve is an extremely sensitive area. Even slight damage or swelling can cause permanent facial paralysis. In fact, a well known risk of parotidectomy is permanent facial paralysis.

> Here, Plaintiff's left side of his face was already paralyzed before the surgery. In addition, once Dr. Blum located the nerve, stimulation through the facial nerve monitor revealed no facial movement or EMG stimulation on the facial nerve monitor. Accordingly, the nerve was damaged before Dr. Blum performed the surgery. No act or omission by Dr. Blum caused or contributed to Plaintiff's facial paralysis. This opinion is based on a reasonable degree of medical probability.
>
> In sum, Dr. Blum's treatment and care was within the standard of care for a surgeon under the same or similar circumstances. In addition, no act or inaction caused or contributed to Plaintiff's injuries.

*Id.* ¶¶ 9-14. As to plaintiff's contentions regarding the suturing of the surgical incision, Dr. Siddique declares:

> In a parotidectomy, an incision is made in front of the ear down to the neck. At no point is the ear removed or severed from its foundation. Therefore, it is impossible that a parotidectomy would result in an ear being significantly misplaced. If the incision is sutured too tightly, it is possible that the ear would shift very slightly following the procedure.
>
> In the extremely rare circumstance that a parotidectomy resulted in a slight shift of an ear, such a result would be simply cosmetic. The shifting of the ear would not cause an ear infection, pain, or any other discomfort. Furthermore, a slight shift of the ear or a resulting scar would not indicate a violation of the standard of care in a parotidectomy.
>
> Although it is common to have some blood remain in the ear canal after surgery, the blood will simply dry and fall out of the ear following surgery. The blood will not remain nor will it cause infection. There is no need to drain the ear of this blood. Medically, Plaintiff's allegation that there was "massive blood stuck in Plaintiff's ear" is nonsensical and would not have resulted from the surgery.

ECF No. 152-3, Ex. B, ¶¶ 7-9.

The court's neutral expert, Dr. Fee, also opined that the treatment plaintiff received from defendants fell within the standard of care (as transcribed above), with one possible exception. ECF No. 142. Dr. Fee noted that a discharge summary reported that plaintiff's facial nerve was transected but the operative report said the nerve was intact. ECF No. 142 at 2. According to Dr. Fee, "if the nerve was transected it should have been repaired immediately. Not to have done so, would be below the standard of care." *Id.* Dr. Fee notes that "the only way one can determine this is to ask Drs. Toft and Blum if the nerve was or was not transected. There is no radiological study or neurological test that can determine this at this point . . . ." *Id.* at 3. Based on this portion of Dr. Fee's report, plaintiff now argues that defendants violated his Eighth Amendment rights by transecting his facial nerve and failing to repair it.

1    Dr. Fee suspects, however, that the discharge summary's notation that the nerve was
2    transected was a typographical error, because defendants "give a nice description of the facial
3    nerve in their operative report and were prepared to do a facial nerve graft and repair (see Toft
4    pre-op consultation) if that was found." *Id.* Specifically, notes Dr. Fee, defendants wrote in the
5    operative report, "There was no laceration of the nerve." *Id.* at 4; ECF No. 70 at 11-12. "Also,
6    the hand written 'Surgeon's Operative Note' written immediately at the conclusion of the surgery
7    states that the facial nerve was intact (No laceration or transection)." ECF No. 142 at 4.

8    The discharge summary referred to by Dr. Fee was authored by Dr. Eric Morse on March
9    10, 2009, the day plaintiff was discharged. ECF No. 70 at 14. As one of three "discharge
10   diagnoses," Dr. Morse wrote, "Transection of left facial nerve." *Id.* However, as Dr. Fee
11   summarized in his report, all other records of the surgery show that plaintiff's facial nerve was
12   *not* transected. Defendants have provided further clarification in declarations. Dr. Toft declares:

> Dr. Morse was the Trauma Surgeon on call the day of discharge for Mr. Jones.
> Dr. Morse had no involvement in Mr. Jones's facial surgical procedure and the
> reference to a transected facial nerve in his discharge summary is a mistake. I
> assisted in the surgery performed by Dr. Mitchell Blum and we found the facial
> nerve intact and it was not transected. Dr. Blum's operative report correctly
> indicates there was no laceration to the facial nerve.

17   ECF No. 151-6 at 2. Dr. Blum similarly declares:

> I specifically recall that plaintiff's left facial nerve was not transected, which is
> why I noted in my operation report that the nerve was intact. This is also why
> there is no mention of repairing the nerve in my report—this was not necessary
> because the nerve was intact.

21   ECF No. 152-11, Ex. F, ¶ 3. Regarding the discrepancy, Dr. Siddique notes:

> In my experience, an operative report is more accurate than a discharge summary,
> and is more reliable where there is a discrepancy between the two regarding what
> took place during a surgery. This is because operative reports are generally
> dictated shortly after a surgery, whereas discharge summaries are dictated at a
> later time. Further, discharge summaries are generally done by a doctor who did
> not actually perform the surgery (as is the case here), while operative reports are
> authored by a physician with firsthand knowledge of the surgery.
>
> In my experience, it is not unheard of for a typographical error to appear in a
> discharge summary. While physicians generally proofread their dictations,
> occasionally a mistake is missed. It is reasonable to conclude that the notation in
> the discharge summary that the left facial nerve was transected was a
> typographical error, in light of Dr. Blum's declaration stating that the nerve was

15

> not transected.
>
> In his report, Dr. Fee noted several findings that I believe to be inconsistent with the conclusion that Plaintiff's facial nerve was transected during the subject surgery.
>
> Specifically, on page 3 of his report Dr. Fee noted the following findings: "Facial Nerve function: Forehead – 25% of normal, Eye – 90% of normal, Midface – 50% of normal, Lower face – 50% of normal." If the main trunk of the left facial nerve was transected during the subject surgery, all of these findings would have been 0%. If one of the branches of the left facial nerve was transected during the subject surgery, then at least one of these findings would have been 0%. The findings as noted are inconsistent with any transection of the left cranial nerve whatsoever.
>
> Dr. Fee also made the following finding on page 3 of his report: "Cranial nerves . . . 7 decreased facial movement…" The No. 7 cranial nerve is the main nerve at issue in this litigation. If the left facial nerve was in fact transected during the subject surgery, this finding would have been "no facial movement."

ECF No. 152-4 at ¶ 15. In sum, the only suggestion that the facial nerve was transected is a notation by Dr. Morse that has every indication of being a typographical or dictation error. Apart from that notation, all of the medical evidence--consisting of the operative report, the declarations of both defendants', and Drs. Siddique's and Fee's explanations of why the medical records indicate no transection of the nerve--demonstrates that the nerve was not transected. Plaintiff has proffered no evidence other than the apparently erroneous notation that can demonstrate that the nerve was, in fact, transected. Accordingly, on the record before the court a trier of fact could not reasonably conclude that defendants transected plaintiff's facial nerve and deliberately failed to repair it. *See Matsushita*, 475 U.S. at 587.

As to his contention that defendants were deliberately indifferent by failing to remove a bullet, plaintiff has repeatedly argued, and continues to do so, "that there was only one bullet; having been shot in the neck once and (the shotgun pellet) rolling around, just under the skin entering the face of Plaintiff having hit no bone, nothing that would've caused a buckshot pellet to fragment." ECF No. 161 at 8. Because images of plaintiff's head taken after his surgery show that a bullet or fragment(s) thereof remain in plaintiff's face, plaintiff argues that defendants never removed that one bullet, and fabricated all of the reports that say that a bullet was removed.

/////

This argument is wholly unsupported by evidence and is contradicted by the evidence in record, including radiological images taken just before as well as long after the surgery.

A CT scan of plaintiff's face upon his admission to Mercy San Juan, prior to surgery, revealed "[m]ultiple metallic gunshot fragments over [the] left side of [the] face adjacent to the left mandibular condyle, [the] body of [the] left mandible and deep to [the] left zygomatic arch," including "a large bullet fragment below the anterior left zygomatic arch" and another "large bullet fragment just posterior to the left mandibular condyle." ECF No. 152-5 at 104; ECF No. 161 at 15. Defendant Blum's operative report states that one of these fragments was located and removed during surgery. ECF No. 161 at 29; *see also* ECF No. 152-5 at 119 ("Intraoperative Record" prepared by nurses Emedilio Diamante and Cleo Toribio recording "foreign body metallic" specimen). A "Chain of Custody Report" indicates that the removed bullet was taken from the "masseter space" and turned over to the Sacramento Sheriff's Department. ECF No. 152-5 at 35.

Later images of plaintiff's head are consistent with the records from the time of plaintiff's surgery. A CT scan in 2010 revealed "metallic densities in the left left [sic] infratemporal fossa, most likely bullet fragments." ECF No. 152-10 at 49. A radiology report from 2011 found "a generous size metallic fragment presumed to represent a gunshot" in the "left maxillary antrum" as well as "small metallic fragments projected posteriorly and anterior to the C1 level." *Id.* at 14. An x-ray in 2012 showed a bullet in the left maxillary sinus and small radiopaque foreign bodies near the left mandibular condyle. ECF No. 161 at 36. There is simply no support in the record for plaintiff's contention that there was only one bullet, and no fragments, in his face at the time of the surgery.

More importantly, plaintiff has failed to proffer any evidence that it was deliberately indifferent for defendants to leave whatever bullets, pellets, or fragments thereof that currently remain in his face. On the other hand, the three otolaryngologist experts opine that it did not fall below the standard of care to leave those fragments. ECF No. 151-5 at ¶ 5.b.; ECF No. 142 at 4; ECF No. 152-4 at ¶ 11. Therefore, there is no evidence from which a jury could conclude that defendants indifferently left a bullet in plaintiff's face.

Nor is there any evidence from which a jury could conclude that defendants were deliberately indifferent in their treatment of plaintiff's surgical incision. While plaintiff speculates that the incision and suturing thereof were performed improperly, he has offered no evidence substantiating this speculation. And again, the three otolaryngologist experts opine that the incision and suturing met with the standard of care. ECF No. 142 at 4; ECF No. 151-5 at ¶ 5.d.; ECF No. 152-3 at ¶ 7-9. Presented with the evidence, no rational jury could conclude that defendants' treatment of the incision and suturing were deliberately indifferent.

## V. Order and Recommendation

For the reasons stated above, it is hereby ORDERED that plaintiff's May 15, 2013 motion to compel (ECF No. 148) is denied.

It is further RECOMMENDED that:

1. Plaintiff's discovery-related motions dated May 15, 2013 (ECF Nos. 147) and June 6, 2013 (ECF No. 153) be DENIED;
2. Defendants' motions for summary judgment (ECF Nos. 151 and 152) be granted; and
3. Judgment be entered in favor of defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 4, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE